UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HOWARD JOHNSON,

                Plaintiff,

      -against-

THE JACK PARKER CORPORATION,
PARKER FOREST HILL, L.P., and
SAMIR CHRAIBI,

                Defendants.
-----------------------------------------------------------------x

**MEMORANDUM DECISION
AND ORDER**
17-CV-3042 (AMD) (SJB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 30 2019 ★

BROOKLYN OFFICE

**ANN M. DONNELLY**, United States District Judge:

On May 19, 2017, the plaintiff[1] brought this action alleging employment discrimination and retaliation against The Jack Parker Corporation, Parker Forest Hills, L.P., and Samir Chraibi.[2] (ECF No. 1.) The defendants moved for summary judgment. (ECF No. 110.) For the reasons that follow, the defendants' motion for summary judgment is granted.

## BACKGROUND[3]

The complaint arises out of the plaintiff's employment at and termination from Parker Towers, an apartment complex in Queens, New York. The plaintiff, an African-American man, was hired as a full-time doorman in August of 2016. (ECF No. 110-2 ¶ 13; ECF No. 144-1 at

---

[1] The plaintiff's counsel withdrew from representation in late 2017. (ECF Nos. 26, 27, 35.) The plaintiff now proceeds *pro se*.

[2] The complaint names "Samir Sharabi" as a defendant. (ECF No. 1.) The Court granted the plaintiff's motion to correct the spelling of the defendant's name on July 6, 2018.

[3] The plaintiff has communicated regularly with the Court about various subjects, many of which are unrelated to this litigation, but has not submitted a response to the defendants' motion or a Rule 56.1 counter-statement of undisputed facts. When the plaintiff failed to respond to the defendants' opposition motion in December of 2018, the Court gave him an extension, and reminded him that the Court would decide the motion without his input if he did not file a response. To date, the plaintiff has not responded. I have reviewed the entire record in connection with this motion, and construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

17.) He was terminated about three months later, in November of 2016. (ECF No. 144-1 at 53.)

Before he was hired for the full-time position, the plaintiff worked as a temporary porter and doorman, hired by Parker Towers through a staffing agency. (*Id.* at 12, 13.) In June of 2016, after talking with management about securing a full-time position, the plaintiff submitted a formal job application. (*Id.* at 18, 19.) He underwent a drug test and interviewed with Samir Chraibi, the general manager for the complex, and was hired in August of 2016. (*Id.*)

The plaintiff alleges that he began experiencing harassment based on "[his] race, [his] color, and [his] background" as soon as he became a doorman. (*Id.* at 34.) He claims that Mr. Chraibi called him multiple times just to see how he answered the phone, that management falsely accused him of not doing his job, and that Mr. Chraibi asked whether he wanted to work in the "front" or the "back" of the house. (*Id.*) He claims that Mr. Chraibi asked him if the "carpet [was] dirty or [was] it something [Mr. Chraibi was] smoking." (*Id.*) Finally, he alleges that he did not receive a doorman uniform, although he made repeated requests for one. (*Id.*)

On October 3, 2016, Parker Towers management, including Mr. Chraibi, met with the plaintiff about his performance.[4] (ECF No. 144-3 at 57.) The plaintiff does not remember what management told him, (ECF No. 144-1 at 45-46), but according to a memorandum about the meeting, they "express[ed their] concerns with his performance as a [d]oorman[.]" (ECF No. 144-3 at 57.) They explained that "his demeanor was very lackadaisical[,]" and that he "d[id] not greet residents properly, d[id] not answer the phone properly and was not following the [standard operation practices] properly[.]" (*Id.*) The plaintiff "expressed that he would like the

---

[4] The plaintiff does not remember the exact date of the meeting. (ECF No. 144-1 at 43.)

opportunity to try to change," and management informed him that if his performance did not improve, he would be moved "to a [p]orter position at the same pay rate." (*Id.*)

About a month later, on November 11, 2016, Parker Towers management, including Mr. Chraibi, reassigned the plaintiff to a porter position. (*Id.*; *see also* ECF No. 144-3 at 58.) The plaintiff submitted grievances to his union, stating that his work routine was changed without sufficient notice, and that Mr. Chraibi harassed him during work. (ECF No. 144-4 at 6). He claimed that Mr. Chraibi "called him 5 times on the phone[,]" and that the harassment was ongoing. (ECF No. 144-4 at 28.)

On November 12, 2016, the plaintiff posted the following message on social media:

> Life is funny just when u think thing going good u get put back in
> that space u don't want to be in he really thing I'm sit back let him
> do to me like he do them I'm not them I got street smarts and book
> smart he coming for my head I'm coming for your I'm going to see
> my guy today he love me I'm 4 and 0 about to be 5and 0 I got
> story to tell how street kid clean up his life to be a doorman they
> going to eat this up coming for me no I'm coming for uuuuuuu
> show u better then I can tell u the media going love my story
> smarter then u think home boy[.]

(ECF No.144-4 at 33; ECF No. 144-1 at 54.) The plaintiff's new supervisor reported the post to the building's management. (ECF No. 110-2 ¶ 29.)

The plaintiff was fired a few days later, on November 18, 2016. (ECF No. 144-1 at 53; ECF No. 144-4 at 5.) According to an internal Parker Towers memorandum, the plaintiff was terminated because he was "negative and upset" about his new position, "called the [u]nion" to ask if the reassignment was permitted, and "threaten[ed] management" on social media. (ECF No. 144-3 at 58.) The plaintiff claims that he was terminated because he was "smart" and was "show[ing] up" his direct supervisors in front of higher management. (ECF No. 144-1 at 37.)

3

The plaintiff filed an additional grievance with his union the night he was fired, claiming the termination was unjust. (ECF No. 144-4 at 7.) Later that month, he filed a claim of discrimination with the Equal Employment Opportunity Commission (*Id.* at 8) claiming that although there were three other black doormen, the plaintiff was replaced with a "white Latino male," which demonstrated discrimination on the basis of "race/color/complexion." (*Id.* at 10.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.") (quoting *Anderson*, 477 U.S. at 248)). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and

draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

## DISCUSSION

The plaintiff alleges discrimination and retaliation under both Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Claims under each statute are analyzed under the same standard. *See Ahmad v. White Plains Sch. Dist.*, No. 18-cv-3416, 2019 WL 3202747, at *4 (S.D.N.Y. July 16, 2019) (citing *Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that "claims of racial discrimination [are analyzed] identically under Title VII and § 1981.") However, individuals can be held liable only under § 1981 – not Title VII.[5] *McKinney v. Tanner, et al.*, No. 18-cv-10548 (CM), 2019 WL 3067116, at *3 (S.D.N.Y. July 12, 2019) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). The defendants move for summary judgment on all of the plaintiff's claims.

### I. Discrimination

The plaintiff's Title VII and § 1981 discrimination claims are dismissed because he cannot show a *prima facie* case of discrimination. Disparate treatment claims under Title VII and § 1981 are analyzed using the *McDonnell Douglas* burden-shifting framework. *Bowen-Hooks v. City of New York*, 13 F.Supp.3d 179, 209-10 (E.D.N.Y. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Under the framework, the plaintiff must first establish a *prima facie* case of discrimination. *See id.*; *see also Holleman v. Art Crating Inc.*, No. 12-cv-2719, 2014 WL 4907732, at *46 (E.D.N.Y. Sept. 30, 2014) (citations omitted). Once the plaintiff makes that showing, "the burden of production [shifts] to the

---

[5] The plaintiff alleges only § 1981, and not Title VII, claims against the individual defendant, Mr. Chraibi.

5

employer and require[es] the employer to come forward with its justification for the adverse employment action against the plaintiff." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). If the employer meets this burden, "the presumption 'drops out of the picture'" and the plaintiff must demonstrate that the employer's explanation is pretextual. *Id.*; *see also Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003)).

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he has suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802–04 (1973); *Littlejohn*, 795 F.3d at 307. The parties do not dispute that the plaintiff, an African-American man, is a member of a protected class. (ECF No. 110-2 ¶ 15.) Nor do they challenge whether the plaintiff was qualified for his position. The only disputed issues are whether the plaintiff suffered an adverse employment action and if so, whether it occurred under circumstances giving rise to an inference of discrimination.

There are two employment actions at issue: the plaintiff's reassignment to the porter position and the defendants' decision to terminate the plaintiff. The plaintiff undoubtedly suffered an adverse employment action when he was terminated from his job at Parker Towers. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("An adverse employment action is a materially adverse change in the terms and conditions of employment" and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."); *see also Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse employment actions include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (alteration, citation, and internal quotation marks omitted). The defendants argue that the plaintiff did not suffer an adverse employment action when they reassigned him to the porter position because he received the same salary, and his hours did not change. While it is undisputed that the plaintiff received the same salary, (ECF No. 144-1 at 46), the porter position was an entirely different job with a different title.[6] Moreover, according to the defendants, they transferred the plaintiff because he performed poorly as a doorman (ECF No. 144-3 at 58), suggesting that he was demoted.

Despite these adverse employment actions, the plaintiff has not established that the circumstances give rise to an inference of discrimination. The plaintiff cites the following as evidence of discrimination: he "didn't get a uniform[,]" he "was wrongfully terminated[,]" and his "manager was harassing [h]im" by calling him frequently. (ECF No. 144-1 at 32.) However, the record does not suggest that the defendants did these things because of the plaintiff's race.[7] *See Caines v. City of New York*, No. 13-cv-676 (VEC), 2015 WL 13021892, at *7 (S.D.N.Y. July 8, 2015) (citing *Bikerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1998) (courts should "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture" at the *prima facie* stage)). In fact, the plaintiff agreed in his deposition that he was fired was because the general manager "didn't like [him]" and "was out to get [him]." (ECF No. 144-1 at 37.) When

---

[6] I disagree with the defendants' argument that the plaintiff's reassignment was not an adverse employment action because his collective bargaining agreement allowed them to change his position. A reasonable jury could still conclude that the reassignment was an adverse employment action.
[7] The fact that the defendants replaced the plaintiff with a "white Latino male" is not evidence of discrimination in these circumstances; not only were there other black doorman, the plaintiff does not provide comparator evidence between himself and his replacement. (ECF No. 144-4 at 2.)

7

asked whether his reassignment or transfer was because of his race or color, he answered "I can't answer for how [Mr. Chraibi] thinks." (*Id.* at 37-38.)

Because the plaintiff has not established a *prima facie* case, it is unnecessary to undertake the burden shifting analysis. Nevertheless, if the plaintiff had made out a *prima facie* case, the defendants provide legitimate reasons for their decision to reassign him and later to fire him. The defendants say that the plaintiff did not do well as a doorman; he was "lackadaisical," and did not greet residents or answer the phone properly. (ECF No. 144-3 at 57.) They met with the plaintiff to discuss these concerns, and memorialized the meeting in a memorandum. (*Id.*) After they assigned him to be a porter, he had a "negative" attitude, and posted a message on social media that could reasonably be seen as a threat to management. (*Id.* at 58.) Moreover, the plaintiff's claim that the defendants fired him because he was "smart" and was "show[ing] up" his direct supervisors in front of higher management (ECF No. 144-1 at 37) does not support a claim of discrimination.

The same reasoning applies to the plaintiff's § 1981 discrimination claim against Mr. Chraibi. As an initial matter, Mr. Chraibi interviewed the plaintiff for the job and recommended that he be hired, (ECF No. 144-1 at 19; ECF 110-5 ¶ 5), and is thus entitled to an inference that he did not fire him with discriminatory animus. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("When the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)) (collecting cases). In any event, the plaintiff does not cite any evidence suggesting that Mr. Chraibi was motivated by racial animus. Indeed, the plaintiff testified at his deposition that Mr. Chraibi called the plaintiff during work hours because of the

plaintiff's "background" – he grew up in the South Bronx – and because Mr. Chraibi did not like him, not because of the plaintiff's race or color.[8] (ECF No. 144-1 at 35-36.)

Accordingly, the plaintiff's discrimination claims under Title VII and § 1981 are dismissed.

## II. Retaliation

The plaintiff's Title VII and § 1981 retaliation claims are dismissed because he did not engage in protected activity. The *McDonnell Douglas* burden-shifting framework also governs retaliation claims under both Title VII and § 1981. *Bowen-Hooks*, 13 F.Supp.3d at 220 (citing *Fincher Deposit. Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis."). A *prima facie* case of retaliation requires (1) the plaintiff's participation in a protected activity known to the defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). The parties do not dispute that the plaintiff was terminated. (ECF No. 110-2 ¶ 32.) Thus, the plaintiff must establish that he participated in a protected activity, and that there was a causal connection between his protected activity and his termination.

The plaintiff did not engage in protected activity. "[A]ny action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination' may constitute retaliation." *La Grande v. Decrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir.

---

[8] The plaintiff was asked at his deposition whether "the harassment, the multiple phone calls, was based on [his] race or color?" The plaintiff responded, "That makes no sense what you just said. What does phone calls have to do with my race and my color when the general manager already knew my race and my color?" (ECF No. 144-1 at 35.)

9

2010) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Littlejohn*, 795 F.3d at 317-18 (concluding that even informal protests of discriminatory employment practices, such as complaints to management, are protected activities under Title VII). An employee's complaint must make clear that the employee believes he is the victim of discrimination because of a protected trait. *Kelly*, 716 F.3d at 17 ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."); *see also Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally.") (citation omitted).

The plaintiff made numerous complaints to his union, but never reported any harassment or adverse employment action due to his race or color. He complained that "his work routine . . . changed without sufficient notice[.]" (ECF No. 144-4 at 28.) He complained that the general manager called him five times on the phone. (*Id.*) He complained that he was unjustly suspended. (*Id.* at 30.) Not once did he mention his race or color. Thus, while the defendants justified the plaintiff's termination because, among other reasons, he "ask[ed] the union if management was allowed to change his position[,]" (ECF No. 144-3 at 58), the plaintiff's complaints were based merely on perceived unfair treatment generally – not because of his race.

Because the plaintiff has not pleaded a *prima facie* case of retaliation, I do not engage in the remainder of the burden shifting analysis. Accordingly, the plaintiff's retaliation claims under Title VII and § 1981 are dismissed.

## CONCLUSION

For the reasons explained above, I grant the defendant's motion for summary judgment on all of the plaintiff's claims.[9] The Clerk of Court is respectfully directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: July 30, 2019
      Brooklyn, New York

---

[9] The defendants argue that the plaintiff "identified 'the Jack Parker Corporation,' which is merely a brand name for a family of real estate development and management companies, and is not an entity against which [the] plaintiff can proceed." (ECF No. 110-3 at 21.) I dismiss the plaintiff's complaint because he did not plead a *prima facie* case of discrimination or retaliation, and accordingly do not reach this argument.

11